Ignatz Andrzejewski, Defendant in Error, v. T. E. Hill, Plaintiff in Error.

Gen. No. 15,165.

1. PLEADING—*particular declaration in personal injury action construed.* The particular count of the declaration referred to in this case construed to mean that the defendant without signal or notice to the plaintiff so changed the position of and so moved the boom which struck him that it inflicted the injury, and that this, under the circumstances, was negligence.

2. VERDICTS—*when not disturbed.* A verdict should not be set aside as against the clear and manifest weight of the evidence unless all the material and competent evidence that under any reasonable view the jury and the trial judge could and did legally consider on the questions involved, is also before the Appellate Court.

Action in case for personal injuries. Error to the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed May 4, 1911.

FOLLANSBEE, McCONNELL & FOLLANSBEE, for plaintiff in error; MITCHELL D. FOLLANSBEE and CLARENCE J. WHITE, of counsel.

FRANK W. KORALESKI and ROYAL N. IRWIN, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

The judgment to reverse which this writ of error was sued out is for $7,000. It was rendered in a suit for a very serious injury suffered by the plaintiff Andrzejewski while in the employment of the defendant, T. E. Hill, as a laborer. He claimed in the first count of his declaration as it finally went to the jury, that the defendant's negligence caused the accident, in that the defendant directed the plaintiff to work near, about and upon a certain platform, which platform was

of such height and construction as to be dangerously near to moving machinery used in the conveyance of materials, and described as a certain boom and conveyor, together with certain chains, cables, pulleys and devices attached thereto, which devices were then and there operated by the defendant by steam power. The declaration further alleges that because of the plaintiff's attention being engrossed by the performance of his duties he was unable to observe the movements of said machinery and to guard against the same. The gist of the first count is that the injury occurred by a default of the defendant in his duty *to use reasonable care to supply the plaintiff with a safe place to work.*

In the second count, after stating his employment as a laborer for the defendant to aid and assist in the management of the appliances and devices before stated, and in the removal of material by means of them, the plaintiff alleged that although he was ignorant of the intricacies of such machinery and devices, the defendant failed to warn and instruct him relative to the same, and while he (the plaintiff) was engaged on September 2, 1904, "in obedience to the defendant's orders and in the exercise of due care in the performance of his usual duties near and about said boom, cables, pulleys and shives," the defendant without notice to him *"changed the movement* of said machinery, boom and appliances so as to cause the same, or certain portions thereof, to strike the plaintiff a severe and violent blow," to his great, severe and permanent injury.

There were, in the finally amended declaration which took the place of the former ones and was filed by leave of court after the jury was empaneled, four counts, but the third and fourth were withdrawn from the jury by a peremptory instruction at the close of all the evidence to find the defendant not guilty thereon. The two counts above abstracted are to be assumed, therefore, to have been alone considered by the jury.

While the gist of the first one is the allegation of the failure of the defendant to use reasonable care to supply the plaintiff with a safe place to work, that of the second is a statement which we interpret to mean that the defendant without signal or notice to the plaintiff so changed the *position* of and *so moved* the boom which struck him that it inflicted the injury, and that this, under the circumstances, was negligence.

We are aware that this meaning is not attributed to the words of the second count by the plaintiff in error, whose counsel say in their reply brief that the words "changed the movement of said machinery, boom and appliances" so as to cause the same to strike the plaintiff, can *only* mean that the defendant "caused the *ordinary* movement of said machinery, with which plaintiff was well acquainted, to be modified or changed in some unexpected or unusual way, and operated the machine in a different way without notification to plaintiff of such change."

Of course the language of the count might bear this restricted meaning, but we think that considered with reference to the character of the machinery and appliances involved and the facts of the accident as they appear from the evidence submitted to the jury, or rather from that part of it which has been put before us (for we shall point out that a part of it is wanting in this record), the broader and more extended construction which we have indicated of the language, perhaps rather inaptly used, is a fair, legal and justifiable one for us to put on it.

The boom which did the mischief was a part of a derrick. It was sixty feet long or more, and it was connected with the mast of a derrick a little longer. As counsel for plaintiff in error say, the boom could be and was "raised, lowered and swung at varying heights by means of pulleys and ropes to all points of the compass." "Its movements were governed by the engineer."

The plaintiff, when the accident happened, was working on a platform or scaffolding at least ten and perhaps twenty feet high, about twelve feet long and eight feet wide. According to testimony which, for the purpose of reviewing this verdict and judgment we must assume the jury believed, as they certainly had the right to do, the plaintiff was performing the work he was put on the platform to do when the boom, swinging over this platform, struck him on the shoulders. He was in a stooping position, or on one or both knees, with his back to the derrick, and untying or cutting the strings closing the mouth of bags of cement. That it was not a safe but a dangerous place to work is plainly apparent from the accident which, in this situation of things, happened to him; and this is rather emphasized than minimized by the contention of the plaintiff in error that for a number of times, estimated from a hundred at the least to perhaps two hundred during the day, that heavy boom, with its appendages, swung over this platform where this workman was not only dumping through a chute the boxes of concrete that the derrick brought, but receiving, untying and dumping through the same chute bags of cement brought by hand to the scaffold; and that although the boom *could* swing at varying heights, it *did* swing every time only four or five feet above the platform, so that the plaintiff had to stoop or "duck" every time the boom thus came around. It may as well be noted here, however, that although this is the testimony of the foreman, it is not clear to us, in view of the testimony of others and the photographs shown to the jury (but not to us), that this statement was received by the jury as absolutely establishing this condition of things, although it was not directly contradicted. If, as plaintiff in error contends, the derrick could and was intended to swing its boom at varying heights, it seems strange that, without apparent necessity, workmen on the platform should

have been subjected to this extremely wearisome bodily performance, to say nothing of the danger involved.

An answer, however, to the proposition that the place furnished by the defendant to the plaintiff was plainly a dangerous one, is made with great force by the defendant, that the plaintiff assumed the risk of the danger by beginning the work thereon and continuing it for five days without complaint, during all which time all the dangers must have been apparent to him, and that in this case, despite the fact that as a general rule the question of assumption of risk is one of fact for the jury, under proper instructions from the court (which in this case it is conceded were given), it became one of law for the court, because reasonable men could not have differed upon it. Therefore, it is urged, the court should have taken this count also from the jury.

As to the second count, the claim of the plaintiff in error is that in any view of its meaning, however favorable to the defendant in error, it is tantamount at most to an allegation of the negligence of a fellow servant of his, for which the common employer cannot be held liable. This question too, whether or not two persons are fellow servants, while generally one of fact for the jury, under a correct definition by the court of fellow servants (which definition, as is also conceded, was given in this case by the instructions), it is said, became one of law in this case because reasonable minds could not differ on it.

Therefore, it is said, the instruction which was tendered, to the effect that the *engineer* and the plaintiff were fellow servants, should not have been refused, and this count and the entire case should have been taken from the jury by a peremptory instruction for the defendant. Moreover, the verdict, it is claimed, was contrary to the clear and manifest weight of the evidence under the conceded law and the instructions which *were* given.

Counsel for the defendant in error, on the other

hand, declare in their reply brief that the issue in the case under this count was whether the defendant "maintained a man whose duty it was to signal the engineer who controlled the derrick, and whether or not at the time of the accident said *signal man* gave without warning the plaintiff a signal to the engineer to lower the boom in such a manner that the same struck the defendant in error. (Of course, however, the defendant in error is not bound by this declaration in argument, if the jury can be held justified on other grounds in their verdict.)

On the question of the maintenance of such a signal man and his alleged actions, the evidence is conflicting. If he existed, however, the plaintiff in error maintains that equally with the engineer he should have been held, as a matter of law, a fellow servant of the defendant in error, and the same results should have followed below and should follow here as to the disposition of the case.

The defendant in error claims, however, that the signal man, on whose existence and default he relies, should be considered a vice principal representing the plaintiff in error.

It is undoubtedly true that the argument in favor of the positions of plaintiff in error as to each of the questions indicated is a forceful one, as the record before us stands. But in the view which we take of that record it is not necessary to discuss them.

We are asked to reverse this judgment on the ground that the cause should have been taken from the jury, because reasonable men could not differ as to the assumption of the risk producing the injury, and could not have differed as to the question whether, under the legal and restricted definition of "fellow servants," which absolves the master from liability for their negligence, both the engineer and signal man (whom we must assume for this purpose existed) were such fellow servants of the plaintiff. And we are asked in the alternative to reverse this judgment, rendered on

the verdict of a jury, and confirmed by the trial judge, on the ground that the verdict was against the clear and manifest weight of the evidence. It becomes frequently our duty to do this, under the powers and obligations belonging to this court. But it is in every case done in full consideration of the grave responsibility which such action involves in reversing on review the action of a judge and jury who, unlike us, heard the witnesses and considered at first hand, usually through a somewhat extended trial and deliberation, all the evidence adduced in the case. It is clear, therefore, that we should not do it unless *all* the material and competent evidence that under any reasonable view whatever the jury and the trial judge could and did legally consider on the questions involved, is also before us. In this case it is not. In connection with the testimony of the defendant himself, three photographs showing, according to his testimony, the location and appearance of the platform and derrick and of the engineer's position and shelter, and in fine "the work and its various conditions," were marked as Defendant's Exhibits 1, 2 and 3, and introduced in evidence. It cannot be properly claimed that they were immaterial or incompetent testimony on the matters involved in this suit, for the defendant introduced them of his own motion, but without objection from the plaintiff. In the direct examination of Mr. Hill there appear a score of questions and answers concerning and involving these photographs, the answers in some cases "showing that the witness indicated" positions of the places involved by pointing out a portion of the photograph.

In cross-examination on the same subjects, such as "where the engineer stood," "where the man was at the mixer," and where other matters connected with the movements of the derrick and with the accident, were almost as many questions, answers and indications referring to these photographs and intelligible only in connection with them.

On redirect examination and on recross examination Mr. Hill's attention was again directed by his counsel to the photographs and the marks of the various places which had, in the course of his examination, then been placed on them, and several more questions and answers asked and made referring to them.

When Mr. Wittick, the foreman for the defendant, was placed on the stand he was not only on cross-examination referred to and examined on the photographic exhibits, but on direct examination, after stating that he could show the position of the plaintiff at the time of the accident better if he could be allowed to illustrate and indicate with "the table there," he left the stand and went to the "long table before the jury" and illustrated the positions by referring to points on and about the table.

But the photographs do not appear in the bill of exceptions. Not all the other evidence is certainly intelligible without them. We have commented on a similar lack in the record in the case of Dahl v. Macdonald Engineering Company, 141 Ill. App. 187, where, in accordance with the authorities cited therein, we held that the certificate of the trial judge that the bill of exceptions contained "all the evidence offered or received," did not overcome the showing made by the bill of exceptions itself, that it did not contain all such evidence (in that case a model used at the trial was lacking), and that we could not take the responsibility of saying, in such a case, that the verdict was not supported by the evidence, or that it was manifestly against the weight of the evidence. We may add, for illustration merely, that if the law be as distinctly announced in Chicago and Alton Railroad Co. v. Swan, 176 Ill. 424, affirming this court in the same case in 70 Ill. App. 331, that to make "fellow servants" under the settled rule in relation thereto in this State, men must be so situated "that they may exercise an influence over each other promotive of proper

caution,'' whether they fall under the first category of the rule and ''are co-operating in some particular business in hand,'' or, under the second, because ''they are brought by their usual duties into habitual association,''—the importance of their relative stations and positions, as shown in the photographic exhibits is emphasized; and that the relative position of the signal man may be also important.

Nor perhaps is the suggestion without significance that if there were no signal man, properly so called, and the plaintiff thought there was, there might be a question for the jury whether the plaintiff assumed a risk which he did not know existed. The position of a man who sometimes gave signals, whether to warn the workmen or for another purpose, might be material. If the position of such a man was such that he could easily see the workman and know when the boom was to move and was likely to strike him, and the workman believed him always to give a required signal, it might be that the workman could be held ignorant, and the master informed, of a risk in the place of the work, resulting from the fact that the man who sometimes gave signals for the movement of the boom was not ordered or expected *always* to do so.

Nor can it be said that the evidence is all clear, consistent and intelligible in regard to the material positions of the various parties, constructions and appliances involved, when all reference to the photographs and physical demonstrations are eliminated.

This injury was inflicted by a boom, under the control of an engineer, swinging over a platform. The platform is said by one witness to have been ten feet high, by another five or six feet over his head as he stood on the ground, and by a third twenty feet high. The height of the mast of the derrick was variously given from thirty to sixty-seven feet. The distance from the platform to the derrick was given by the plaintiff as fifteen feet, and that from the mast of the derrick to the engine fifteen feet more in a straight

line,—thirty feet that is, from the platform to the engine. The foreman Wittick placed the distance from the engine to the platform as only fifteen feet and says he reminded the plaintiff of this short distance in warning him that he "must give his own signals." He makes the distances consistent by placing the mast of the derrick twelve feet from the platform and the engine only three feet from the derrick. But the defendant says the mast of the derrick was twenty-five to thirty feet from the platform and the engine not further on in a straight line, but at an angle, sixty to seventy feet from the platform.

The brief of the plaintiff in error justly says that there were three objects round which the testimony centered—the derrick, the engine and the platform— and it is quite conceivable that the photographic exhibits were useful under these circumstances to the jury and would have been to us.

We do not feel justified, in view of their absence, to disturb this judgment, and it is affirmed.

*Affirmed.*